Dear Mr. Martin:
On behalf of the Legislative Auditor, you have requested that the Attorney General provide an opinion regarding certain bond proceeds related to the Louisiana Public Facilities Authority's $1,315,210,000 Special Assessment Revenue Bonds (Unemployment Compensation Program) Series 1987 (the "Bonds"), which were issued under authority of Act No. 1 of the First Extraordinary Session of 1987 ("Act No. 1").
The questions you want addressed were originally presented to this office by the Authority in October of 1998. In December of 1998, the opinion was suspended at the request of the Authority and the Department of Labor. However, pursuant to your request, we will now address those issues.
As noted in the Authority's original request, in 1987 high levels of unemployment had caused the State of Louisiana to deplete its account in the Unemployment Trust Fund and borrow $800 million against the federal account of the Unemployment Trust Fund (the "Federal Account"). Act No. 1 was enacted, in part, to authorize a means by which the state could finance and pay the outstanding advances which the state had received from the Federal Account. (See La. R.S. 23:1532.1, as enacted by Act. No. 1). The act specifically authorized the levy of a temporary special assessment tax on employers based on wages to employees, and further authorized the pledge of the assessment tax proceeds to the payment of bonds issued by the Authority.
On September 1, 1993, the Bonds were defeased to their first call date (September 1, 1994 @ 102%) and on September 1, 1994 the Bonds were paid and canceled. We understand that all contracts and agreements with respect to the Series 1987 Bonds were canceled and discharged in connection with the defeasance and payment in full of the Series 1987 Bonds, and that at this time there are no existing contracts or agreements between the Authority, the state and/or others related to the Bonds or the proceeds thereof.
It is our further understanding that while the Bonds were outstanding, a positive arbitrage (interest earnings in excess of the then calculated bond yield) was calculated on the Reserve Fund (which fund was funded solely with bond proceeds) created in connection with the issuance of the Bonds. However, the subsequent defeasance of the Bonds changed the arbitrage calculation, resulting in a reduction of the amount of interest earnings required to be rebated to the federal government. The Authority, as the issuer of the Bonds and the only party permitted by federal law to request a refund, requested and in due course received a refund of a portion of the rebated earnings from the Internal Revenue Service.
In connection with the foregoing, the Authority requested our opinion on the following questions:
 1. Are the documents that were canceled and discharged in 1993 of any significance or bearing on the disposition of the refund?
The provisions of Chapter 14 of Title 39 of the Louisiana Revised Statutes pertain to the "Defeasance of Securities of Public Entities". La. R.S. 39:1441 includes within the definition of `public entities' are ". . . special authorities heretofore or hereafter created by or pursuant to the constitution or statutes of the state. . .". In our opinion, the Authority falls within the definition of public entities contained in the statute pertaining to defeasance, and therefore these provisions of law are applicable to securities issued by the Authority.
Pertinently, La. R.S. 39:1442 provides that when the securities of a public entity, as defined therein, have been defeased in accordance with the provisions thereof, the securities of the public entity ". . . shall be deemed to be paid and shall no longer be considered to be outstanding under the instrument providing for their issuance, and the covenants, agreements, and obligations contained in the instrument providing for their issuance shall be discharged". Additionally, La. R.S. 39:1443 provides that when the securities of a public entity are defeased, ". . . the public entity shall be released from the covenants, agreements, and obligations contained in the instrument authorizing such securities."
As the Bonds have been defeased in accordance with the requirements of Chapter 14 of Title 39 of the Louisiana Revised Statutes, it is the opinion of this office that the documents generated in connection with the issuance of the Bonds were canceled and discharged at the time of the defeasance. It is our further opinion that those documents have no legal significance or bearing on the disposition of the refund.
 2. If so directed by its beneficiary, the State, through the Office of the Governor and/or the Office of Employment Security of the Department of Labor (the "Department of Labor"), may the Authority directly or through a cooperative endeavor with the State retain the refund and utilize it for economic development purposes; to assist local government financing programs; or other public purposes or programs of the Authority designed to benefit the State?
As previously stated, it is our understanding that the refund consists of interest earned on the Revenue Fund, which fund consisted solely of bond proceeds. It is our understanding that the Revenue Fund contained no special assessment proceeds whatsoever.
We have examined Act No. 1 and the provisions of law enacted thereby in an attempt to find legislative guidance with respect to the disposition of bond proceeds realized after defeasement and/or interest generated thereon.
Although the statutory provisions enacted by Act No. 1 provide clear direction as to the application and use of the proceeds of the employer special assessment, these provisions of law do not address the disposition of bond proceeds received after defeasance of the bonds or after all obligations related to the bonds have been met. Furthermore, our research did not reveal any other provision of law that addresses the disposition of these refunded bond proceeds.
Since the documents generated in connection with the issuance of the Bonds are now canceled and discharged and have no legal bearing on the disposition of the refund, and since there are no statutory provisions pertaining to the disposition of the refund, we are constrained to opine that neither the Governor nor the Department of Labor have the authority to enter into a cooperative endeavor with the Authority regarding the use or application of these funds.
In our opinion, the funds in question are state funds and, as such, can only be expended pursuant to an appropriation by the Legislature.
 3. If the Authority may not be so directed to retain and utilize such funds or is not so directed, what options exist with respect to the use and/or disposition of such funds?
As previously stated, it is the opinion of this office that the funds in question are state funds subject to appropriation. In our opinion, the funds should be paid over to the state and immediately deposited in the general fund in accordance with La. Const. Art. VII, Sec. 9. In accord: Attorney General's Opinion No. 74-1807. Of course, once the funds are deposited in the general fund, the funds could be appropriated by the legislature for any lawful purpose, including appropriation to the Authority for economic development or other public purposes of the State.
We trust the foregoing to be of assistance. Please do not hesitate to contact this office if we can be of assistance in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: JEANNE-MARIE ZERINGUE BARHAM 
Assistant Attorney General
RPI:JMZB:jv
cc: Mr. Thomas A. Antoon, Chairman, LPFA Mr. James W. Parks, II, Executive Director, LPFA